OPINION
{¶ 1} Appellants, R.G. and K.G., parents of the minor child, L.C.B., appeal the decision of the Warren County Court of Common Pleas, Juvenile Division, to grant permanent custody of their child to Warren County Children Services ("WCCS").
 {¶ 2} L.C.B., (dob 01/09/2005), was seven months old when he was removed from *Page 2 
appellants' custody by WCCS in August 2005 and subsequently adjudicated a dependent child. According to the findings of the juvenile court, L.C.B. was returned to appellants' custody in June 2007, but mother asked WCCS to take custody of L.C.B. in September 2007 when appellants became homeless again and mother could not find a shelter that would accommodate the father, as well as the mother and child.
 {¶ 3} Another complaint was filed, and L.C.B. was adjudicated dependent on January 8, 2008. A motion for permanent custody was filed April 2008 and modified in July 2008 to allege that L.C.B. had been in the temporary custody of WCCS for more than 12 months of a consecutive 22-month period. Hearings on the permanent custody motion were held and the juvenile court issued a decision granting the motion.
 {¶ 4} Both mother and father appeal the juvenile court's decision, presenting the same single assignment of error. We will combine the two assignments of error for ease of discussion.
 {¶ 5} Appellants' assignment of error:
 {¶ 6} "THE TRIAL COURT ERRED IN FINDING, BY CLEAR AND CONVINCING EVIDENCE, THAT THE BEST INTERESTS OF THE CHILD, AS DEFINED BY THE FACTORS SET FORTH IN R.C. 2151.414(D), REQUIRED GRANTING PERMANENT CUSTODY TO WARREN COUNTY CHILDREN SERVICES."
 {¶ 7} A natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated if the state proves by clear and convincing evidence that the statutory standards for permanent custody have been met. See Santosky v. Kramer (1982),455 U.S. 745, 768-769, 102 S.Ct. 1388. An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. See In re Starkey, 150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16, 27; In re D.J., Butler App. No. CA2008-06-142, 2008-Ohio-5424, ¶ 18.
PGPage 3
 {¶ 8} The statute applicable under the facts of this case, R.C. 2151.414(B)(1), requires the juvenile court to apply a two-part test when terminating parental rights and awarding permanent custody to a children services agency. Specifically, the court must find that: (1) the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D); and, (2) any of the following apply: the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; the child is abandoned; the child is orphaned; or the child has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(a), (b), (c) and (d);In re Schaefer, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 31-36; In reD.J. at ¶ 19.
 {¶ 9} The juvenile court found by clear and convincing evidence, and appellants do not dispute, that L.C.B. had been in the temporary custody of WCCS for 12 or more months of a consecutive 22-month period at the time the motion for permanent custody was filed.
 {¶ 10} With the finding that the child had been in the custody of WCCS for more than 12 months of a consecutive 22-month period, the juvenile court must determine if permanent custody to WCCS is in L.C.B.'s best interest. See R.C. 2151.414.
 {¶ 11} R.C. 2151.414(D) provides that in considering the best interest of a child in a permanent custody hearing, "the court shall consider all relevant factors, including, but not limited to the following:
 {¶ 12} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 13} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 14} "(3) The custodial history of the child, including whether the child has been in *Page 4 
the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 15} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 16} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 17} The juvenile court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors and there is not one element that is given greater weight than the others. Schaefer,2006-Ohio-5513, at ¶ 56.
 {¶ 18} The juvenile court in the case at bar made a number of findings in its determination that permanent custody was in L.C.B.'s best interest under the R.C. 2151.414(D) factors. First, the juvenile court found that the factors in divisions (E)(7) to (11) were not applicable to this case and the record supports that finding.
 {¶ 19} The record also supports the juvenile court's observation that L.C.B. had been in the temporary custody of WCCS for more than 12 months of a consecutive 22-month period and in the care of the same foster parents for all but approximately five months of the child's last three years. See R.C. 2151.414(D)(3).
 {¶ 20} The juvenile court found that L.C.B. is "very well adjusted" in the foster home and the child depends on the foster parents to meet his needs and the foster parents meet the child's needs. The juvenile court stated that L.C.B. "refers to his foster parents as mommy and daddy." See R.C. 2151.414(D)(1) and R.C. 2151.414(D)(3).
 {¶ 21} The juvenile court found that L.C.B. also has a good relationship with appellants and the interaction is "appropriate." The juvenile court noted, however, that L.C.B. is happy to return to the foster home after visits with his parents. See R.C. 2151.414(D)(1). *Page 5 
 {¶ 22} The juvenile court observed that appellants do not have custody of any of their other children. According to the court findings, appellants have been receiving services through WCCS since L.C.B. was removed from their custody in August 2005. Mother has been compliant with case plan services, which included participating in parenting classes and counseling, and consistently taking the medications prescribed by her psychiatrist. The juvenile court noted that father has been less diligent in his participation with the case plan services.
 {¶ 23} The juvenile court found that despite more than three years of WCCS intervention, appellants "have been unable to overcome certain long term problems." The problems identified by the juvenile court include no reliable transportation, which affects appellants' ability to maintain stable employment, and father's struggle with substance abuse. See R.C. 2151.414(D)(1); see R.C. 2151.414(D)(4).
 {¶ 24} The record also supports the juvenile court determination that L.C.B. is in need of a legally secure permanent placement and the foster parents have become the child's family and are meeting his needs. See R.C. 2151.414(D)(4). The court found that L.C.B.'s bond with appellants is secondary to the bond he has with his foster parents.
 {¶ 25} The juvenile court stated that appellants' history indicates they cannot provide a stable home for the child. The court noted that appellants were provided and had been living in county mental health housing for several months before the permanent custody hearings of August and September 2008, but did not have to pay any rent for the housing until September 2008. The father said he was working "odd jobs" and waiting to see if he would be placed on Social Security disability. The mother worked at a fast-food restaurant for an hourly wage of $7 and testified that she believed her income was sufficient to pay the rent. See R.C. 2151.414(D)(4).
 {¶ 26} The juvenile court indicated that it lacked confidence that appellants can *Page 6 
maintain stable housing, and should appellants again find themselves homeless, "L.C.B.'s need for permanency is not served." See R.C. 2151.414(D)(4).
 {¶ 27} Given the fact that no other placement option was presented to provide a legally secure permanent option for L.C.B. other than appellants or permanent custody to the agency, we find implicit in the juvenile court's discussion the finding that L.C.B.'s need for permanent placement could not be achieved without a grant of permanent custody to WCCS. See R.C. 2151.414(D)(4).
 {¶ 28} Finally, the guardian ad litem ("GAL") for L.C.B. recommended that permanent custody be granted to WCCS. See R.C. 2151.414(D)(2).
 {¶ 29} The record demonstrates that the juvenile court found it in L.C.B.'s best interest to grant permanent custody to WCCS after a careful consideration and discussion of the statutory factors. The juvenile court is not required to credit evidence in support of maintaining the parental relationship when evidence supporting termination outweighs it clearly and convincingly. Schaefer,2006-Ohio-5513 at ¶ 56.
 {¶ 30} Accordingly, the juvenile court did not err in finding by clear and convincing evidence that the grant of permanent custody to WCCS was in L.C.B.'s best interest and the statutory criteria for the award of permanent custody was met. We overrule appellants' single assignment of error.
 {¶ 31} Judgment affirmed.
RINGLAND and HENDRICKSON, JJ., concur. *Page 1